NEW YORK GUARDIAN MORTGAGEE CORP., Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 90–5043.

United States Court of Appeals, Federal Circuit.

Oct. 11, 1990.

Paul Mogin, Williams & Connolly, Washington, D.C., argued, for plaintiff-appellant.

Agnes M. Brown, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With her on the brief were Stuart M. Ger-

son, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before NIES, Chief Judge, and COWEN, Senior Circuit Judge, and MICHEL, Circuit Judge.

COWEN, Senior Circuit Judge.

Appellant, New York Guardian Mortgagee Corporation (Guardian), acquired 76 mortgages, guaranteed by the Veterans Administration (VA), which were defaulted upon. Guardian conveyed the property to the VA in accordance with 38 U.S.C. § 1832(5) (1988), and sought payment on the principal amounts. After delays of payment on the principal Guardian brought suit in the Claims Court, seeking interest under the Prompt Payment Act (PPA), 31 U.S.C. §§ 3901–3907(a) (1988). The Claims Court dismissed for failure to state a claim upon which relief can be granted. *New York Guardian Mortgagee Corp. v. United States*, No. 766–87C (Cl.Ct. Nov. 8, 1989) (Order). We have jurisdiction of Guardian's appeal and we affirm.

## Background

In accordance with 38 U.S.C. § 1803(a)(1)(A) (1988), the VA guarantees a portion of home mortgage loans made to veterans by private lenders in order to assist veterans in purchasing homes. Guardian held 76 of these VA guaranteed home mortgage loans which were defaulted upon. The properties securing the mortgages were foreclosed, and Guardian was the successful bidder at the foreclosure sales. Following the sales, Guardian conveyed the property to the VA under 38 U.S.C. § 1832 and sought payment on the principal amounts. Section 1832(c)(5)(A) provides in pertinent part that "if the holder of the defaulted loan acquires the property securing the loan at a liquidation sale ... the holder shall have the option to convey the property to the United States in return for payment by the Administrator...." The VA paid the principal amounts due, but took an average of approximately 6 months to do so. No interest was paid to Guardian for the delay.

Guardian brought suit in the Claims Court, seeking interest for the delay in payment under the Prompt Payment Act, 31 U.S.C. § 3902(a), which provides in pertinent part:

[T]he head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due.

The trial judge held that a federal contract is required for a Prompt Payment Act claim, and that the procedure under which the VA acquired the properties was pursuant to a scheme which is exclusively statutory and regulatory in nature.

## Discussion

### I

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), the Supreme Court held that

If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

(footnotes omitted).

Congress expressly charged the Office of Management and Budget (OMB) with implementing regulations under the PPA. OMB Circular A–125 (June 9, 1987), 52 Fed.Reg. 21926, is the implementing regulation required by Section 3903 of the PPA. There is no provision in the PPA which purportedly authorizes the recovery of interest under the Veterans Loan Guaranty

Program. Consequently, OMB Circular A–125 must be given controlling weight in deciding the issue before us since we cannot conclude that the regulation is arbitrary, capricious or manifestly contrary to the statute.

There are a number of provisions in the regulation which establish that the VA's obligation to pay Guardian for the property conveyed to the VA was not a "federal contract" within the meaning of the PPA. The purpose of the regulation is stated as follows: "This circular prescribes policies and procedures to be followed by executive departments and agencies in paying for property and services acquired under Federal contract." Paragraph 3 of the Circular states that payment is to be based upon "satisfactory performance of contract terms." Paragraph 4(a) of the Circular requires the government to acknowledge "that property and services received conform with the requirements of the contract." In Paragraph 4(f), the regulation defines a "contract" as "any enforceable agreement, including rental and lease agreements, purchase orders, delivery agreements, and basic purchase agreements between an agency and a business concern for the acquisition of property or services." Paragraph 6 of the Circular includes a detailed statement of information which must be included in the contracts in order to support a claim for interest. There are other parts of the regulation which are pertinent, but the cited paragraphs are sufficient to show that the PPA covers only the acquisition of goods and services by government agencies under written contracts and was not intended to include the VA's statutory obligations under its guaranty loan program.

## II

There was no written contract in this case and none was required. The government did not seek to acquire the property in the usual manner in which it contracts for goods or services. Instead, its obligation was purely statutory—an obligation imposed by provisions of 38 U.S.C. § 1832(c)(5)(A), giving Guardian the option to convey the property to the United States in return for payment by the administrator of the VA.

## III

We also reject Guardian's contention that the Loan Guaranty Certificate which Guardian received in connection with each loan is a contract within the meaning of the PPA. The Loan Guaranty certificate does not create a contract for the acquisition of property or services by the government; rather, it is an instrument which satisfies the statutory obligation of the VA.

The following statement which appears on the face of each Loan Guaranty Certificate supports the conclusion that the VA's obligation under the certificate is statutory rather than contractual:[1]

> This is to certify that pursuant to Chapter 37, Title 38, U.S. Code and regulations effect[ive] thereunder on the date of this certificate [44.00]% of the indebtedness outstanding from time to time under the loan identified herein is guaranteed.

## IV

It is well settled that the United States cannot be charged with interest, except where liability therefor is clearly imposed by statute or assumed by contract. *Smyth v. United States*, 207 Ct.Cl. 369, 302 U.S. 329, 353, 58 S.Ct. 248, 252, 82 L.Ed. 294 (1937); *United States v. Mescalero Apache Tribe*, 518 F.2d 1309, 1314–15 (1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Except for the PPA, Guardian does not claim that any other contract or statute requires the payment of interest by the United States in this case.

Accordingly, for the reasons stated above, the judgment of the Claims Court is

---

1. *See* App. 22.

AFFIRMED.[2]

---

**2.** In response to a request we made at oral argument, the parties filed supplemental briefs on the question whether compliance with the Contract Disputes Act of 1978 is a jurisdictional prerequisite to a suit in the Claims Court to recover interest under the Prompt Payment Act. Since we have decided that the Prompt Payment Act is not applicable to Guardian's claims, we need not reach this issue.