**The UNITED STATES, Appellant,**

v.

**GRUMMAN AEROSPACE CORPORATION,**
Appellee.

**No. 90–1217.**

United States Court of Appeals,
Federal Circuit.

Feb. 27, 1991.

576

Peter G. Barber, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were C. John Turnquist, Associate General Counsel and James T. DeLanoy, Sr. Trial Counsel, Litigation Office, Dept. of the Navy, of counsel.

Gene Perry Bond, of Washington, D.C., argued for appellee. With him on the brief were Lynda Troutman O'Sullivan, John M. Devaney and Perkins Coie. Also on the brief was Raphael Mur, Vice President, General Counsel and Secretary, Grumman Aerospace Corp., of counsel.

Before MARKEY, Circuit Judge,* MILLER, Senior Circuit Judge, and MICHEL, Circuit Judge.

MARKEY, Circuit Judge.

In our non-precedential opinion of October 1, 1990, *United States v. Grumman Aerospace Corp.*, 918 F.2d 185 (Fed.Cir. 1990) (table), we vacated the decision of the Armed Services Board of Contract Appeals (Board), *Grumman Aerospace Corp.*, No. 34665, 90–1 B.C.A. (CCH) ¶ 22,417, 1989 WL 222679 (1989). In that vacated decision, the Board had required the United States to pay contract "costs" presented in a January 1987 claim of Grumman Aerospace Corporation (GAC). We held that the Board lacked jurisdiction because GAC failed to comply with the certification requirement of the 1978 Contract Disputes Act, 41 U.S.C. § 605(c)(1) (1988) (the statute) as implemented by Federal Acquisition Regulation 33.207(c)(2), 48 C.F.R. § 33.207(c)(2) (1989) (the regulation). On October 10, 1990, the government requested, pursuant to Rule 47.8(d), that we render our October 1, 1990 opinion precedential because of its "widespread legal interest." On October 15, 1990, GAC filed a "Petition for Rehearing and Suggestion for Rehearing in Banc."[1]

We grant the government's request, grant GAC's Petition to the extent of considering and disposing of the arguments there presented, and adhere to the result set forth in our decision of October 1, 1990.

## I. BACKGROUND

This dispute began on February 10, 1986, when the Defense Contract Audit Agency (DCAA) issued forty-three Notices of Contract Costs Suspended and/or Disapproved against forty-three of GAC's cost reimbursable contracts. The notices disallowed, as contract costs, dividend payments on restricted Grumman stock awarded to GAC employees under Grumman's Restricted Stock Award Plan (RSAP). On January 7, 1987, GAC submitted an uncertified claim for the disallowed amount of $48,707 and for similar dividend payments and requested that the contracting officer render a final decision holding that RSAP dividend payments constitute allowable compensable costs. In a letter dated January 19, 1987, Mr. C.A. Paladino, Senior Vice President and Treasurer of GAC, purported to certify the previously submitted uncertified claim.

In a final decision dated March 4, 1987, the Department of the Navy's Corporate Administrative Contracting Officer (CACO) denied GAC's entire claim. GAC appealed to the Board on April 1, 1987 and the government moved to dismiss for lack of jurisdiction, contending that the claim had not been properly certified.

On October 24, 1989, the Board held GAC entitled to recover the cost of the restricted stock dividend payments to its employees. The Board denied the government's motion to dismiss, saying: "As Senior Vice President and Treasurer, Mr. Paladino was a proper official within the organization to make the certification...." *Grumman*, 90–1 B.C.A. (CCH) ¶ 22,417, at 112,606. In support of that conclusion, the Board made two subsidiary findings: (1) "At the time of certification, Paladino's functions included overall responsibility for GAC's financial affairs," *Grumman*, 90–1 B.C.A. (CCH) ¶ 22,417, at 112,601 (Finding of Fact 7); and (2) "Paladino, who provided the certification, reports directly to the President of GAC." *Id.* (Finding of Fact 8). The government does not contest those findings, but says it "challenge[s] the [Board's] legal conclusion that these two findings of fact establish that Mr. Paladino was the proper person to certify GAC's claim."

GAC challenges the validity of the regulation, saying it was promulgated without legislative authority and is in conflict with the statute. In the alternative, assuming validity of the regulation, GAC contends that Mr. Paladino is an appropriate officer

---

* Circuit Judge Markey vacated the position of Chief Judge on June 27, 1990.

1. On October 15, 1990, the Federal Circuit Bar Association and the Shipbuilders Council of America filed requests to participate as amici curiae. The requests were accompanied by briefs presenting the same arguments as those presented in GAC's Petition and Suggestion.

to certify the claim. GAC further argues that the effect of our reversal here is to require certification by, and only by, Chief Executive Officers (what GAC calls a "CEO Only" rule).

## II. ISSUES

A. Whether the regulation is a reasonable interpretation of the statute.

B. Whether the government properly raised an issue of the Board's jurisdiction.

C. Whether GAC complied with the statute's certification requirement, as implemented by the regulation, with its January 19, 1987 letter signed by Mr. Paladino.

## III. OPINION

### A. *Validity of the Regulation*

■ The statute provides in pertinent part:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

Clearly, certification is required for claims in excess of $50,000. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed. Cir.1983).

The regulation provides that individuals who may properly certify non-individual contractor claims amounting to more than $50,000 may be drawn from either of two categories:

> (i) A senior company official in charge at the contractor's plant or location involved; or

> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

GAC contends that the regulation is invalid to the extent that it imposes certification requirements beyond "the contractor shall certify" language of the statute. GAC would apply agency principles to determine who may properly certify the contractor's claims. However, nothing in the statute nor in its legislative history either requires or suggests that approach. The statute, being silent on the question of the individual who may certify a claim for a non-individual contractor, leaves a gap. GAC fails to distinguish between a prohibited ultra vires regulation and a permissible act of administrative gap-filling.

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), the Supreme Court held that

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

(footnotes omitted); *see also New York Guardian Mortgagee Corp. v. United States*, 916 F.2d 1558, 1559 (Fed.Cir.1990). The regulation is clearly within the congressionally delegated authority of the Office of Federal Procurement Policy "to issue guidelines with respect to criteria for the ... functions ... of the agency boards ..." that "may be necessary or desirable to carry out the provisions of this chapter...." 41 U.S.C. § 607(h) (1988). Further, it is entirely consistent with the statutory section here involved, merely serving to fill the gap implicitly left by Congress respecting *who* may certify pursuant to that section. As this court has noted:

> The [CDA] merely provides that "the contractor shall certify." *The regulation constitutes a reasonable explication of how the "contractor" shall certify, i.e., it identifies the individuals within the contractor's organization*

*who properly may act for the contractor in certifying. Cf. INS v. Jong Ha Wang,* 450 U.S. 139, 144–45, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). In terms of Admiral Rickover's suggestion, the regulation specifies the "senior responsible contractor official[s]" who are authorized to sign the certification.

The certification requirement furthers an important objective of Congress by "trigger[ing] a contractor's potential liability for a fraudulent claim under section 604 of the Act," *Skelly & Loy v. United States,* 231 Ct.Cl. 370, 685 F.2d 414, 418 n. 11 (1982), and thus " 'discourag[ing] the submission of unwarranted contractor claims.' " *Paul E. Lehman, Inc. v. United States,* [230 Ct.Cl. 11] 673 F.2d 352, 354 (Ct.Cl.1982) (quoting S.Rep. No. 1118, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5235, 5239). "Congress wanted to hold the contractor personally liable, and it considered the best way to do this would be to require contractors personally to certify their claims." *Donald M. Drake Co. v. United States,* 12 Cl.Ct. 518, 519 (1987). *The regulation properly implements this objective by specifying the persons in the contractor's organization who may certify a claim. Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1429 (Fed.Cir.1989) (emphasis added).

Accordingly, we decline GAC's invitation to ignore *Ball* as precedent. On the contrary, we expressly hold that the regulation is not unreasonable, and that it is in furtherance of congressional objectives, is unambiguous, and must be applied literally. *See id.* (holding the regulation "unambiguous" and directing that it be applied "as written"). In sum, the regulation being reasonable, this court may not substitute its own construction of the statutory provision on which it rests. Nor is the writing or amendment of regulations our proper role. Whether it would to us appear sensible, for example, to allow a senior financial officer to certify a claim for money allegedly owed his corporation is simply irrelevant. We are not privy to all of the agency's reasons for its regulation and lack the

expertise developed over the years by the agency in dealing with all aspects of certification. Hence, GAC's arguments based on policy and practicality must be rejected.

### B.  *Jurisdiction*

■ It is well settled that the certification requirement is a jurisdictional prerequisite that must be satisfied by the contractor before it may appeal the contracting officer's claim denial. *See Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1428 (Fed.Cir.1989).

GAC argues that compliance with the certification requirement is not a jurisdictional requirement. The argument fails in light of the extensive case law holding otherwise. *See, e.g., Theon v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985) ("Congress has determined that submission of a certified claim to the contracting officer in the first instance is a jurisdictional prerequisite...."); *W.M. Schlosser Co.,* 705 F.2d at 1338 ("Unless the claim was certified when it was submitted to the contracting officer, the Board should have neither heard nor ruled on the appeal."); *Milmark Servs., Inc. v. United States,* 231 Ct.Cl. 954, 956 (1982) ("It is well established that without such a formal claim and final decision by the contracting officer, there can be no appeal to this court under the CDA. It is a jurisdictional requirement."); *W.H. Moseley Co. v. United States,* 677 F.2d 850, 852, 230 Ct.Cl. 405 ("Since plaintiff failed to certify its claim as required by section 6(c)(1) of the Contract Disputes Act of 1978, we are without jurisdiction to consider its direct appeal to this court."), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Paul E. Lehman, Inc. v. United States,* 673 F.2d 352, 355, 230 Ct.Cl. 11 (1982) ("Unless [the certification] requirement is met, there is simply no claim that this court may review under the Act."); *Triax Co. v. United States,* 20 Cl.Ct. 507, 509 (1990) ("It is well settled that the submission of a properly certified claim to the CO is a jurisdictional prerequisite...."). We see no reason to upset this long-established and well-reasoned precedent.

GAC also argues, now, in its Petition and Suggestion, that the jurisdictional issue should not have been addressed because no certifying signature is required for claims of less than $50,000. The government correctly points out that this is "a new argument that was not presented during the [Board] hearings or to this Court in either its brief or at oral argument." Consequently, GAC is precluded from raising its "need not have been certified" argument at this late date. *See Cedar Lumber, Inc. v. United States*, 857 F.2d 765, 767 (Fed.Cir.1988); *JMT Mach. Co. v. United States*, 826 F.2d 1042, 1048–49 (Fed.Cir.1987).

Beyond the general rule that jurisdictional facts may be waived if not timely pleaded, GAC's argument respecting the amount of the claim is particularly egregious in light of a colloquy during the Board hearing. When a Member of the Board raised the question, government counsel stated that the total claim exceeds $50,000, and GAC's counsel did not dispute government counsel's exposition. In light of that colloquy, GAC's assertion that its own counsel did not himself assure the Board that its claim exceeds $50,000 comes with poor grace. It is unavailing and inappropriate.

Subject matter jurisdiction may be addressed at any time. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1985). Strictly speaking, however, the Board's subject matter jurisdiction, i.e. its jurisdiction to hear and determine appeals from final decisions of contracting officers on certifying claims, remains fully intact whatever is done here. Failure of a claimant to certify the claim results in an inability of the Board to exercise its subject matter jurisdiction in that claimant's case. A purist might for that reason view a claimant's failure to certify as a defect in the claimant's standing. On the other hand, it can be said that Congress limited the Board's jurisdiction over contractor's claims to those that are certified. It is in the sense that the Board is given no power to exercise jurisdiction over uncertified claims that the courts have designated certification as "jurisdictional."

Thus GAC's arguments that certification is not jurisdictional and that jurisdiction was present because the claim was for less than $50,000 must be and are rejected.

## C. *Compliance*

GAC says it complied with the regulation because Mr. Paladino was a proper person to certify the claim. Under the regulation, as above indicated, compliance would require certification by *either* "[a] senior company official in charge at the contractor's plant or location involved ..." or "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." Mr. Paladino fits neither description.

The first description demands that the certifying senior company official have both primary responsibility for the execution of the contract *and* a physical presence at the location of the primary contract activity. Mr. Paladino, as GAC's Senior Vice President and Treasurer, was certainly a "senior company official," but he was not "in charge." He reported at least to Nat Busi, a GAC Vice President and GAC's Controller, who testified that it was he, not Mr. Paladino, who "made the ultimate decision" to present the claim, and that Mr. Paladino "could not pursue the claim ... without [Mr. Busi's] approval...." There is no indication that Mr. Paladino was responsible for anything more than simply deciding and reporting on whether particular dividend-like costs were employee compensation chargeable to a series of government contracts. Moreover, GAC has not established that Mr. Paladino was physically present at the "plant or location involved" in the performance of the contract.

The second description requires "overall responsibility for the conduct of the contractor's affairs" in general. The Board said "Paladino's functions included overall responsibility for GAC's financial affairs." However, the regulation requires more than that, and clearly, an individual having overall responsibility for just the contractor's financial affairs would not fit the description. *Ball, Ball & Brosamer*, 878

F.2d at 1429 (holding that an official whose responsibility is limited to financial aspects of a contractor's affairs is not the proper person to certify a claim). GAC has not met its burden of establishing that Mr. Paladino had the overall responsibility for the conduct of GAC's affairs required by the regulation.

GAC grossly exaggerates in arguing that this court held in its earlier opinion, at least by implication, that a corporation's CEO is the only individual that may certify a corporate contractor's claim. Certainly a CEO or one of equivalent status would satisfy the second description, but certification by a CEO is not required by the regulation or by anything said in either of this court's opinions in this case. Indeed, any such requirement would read the first description completely out of the regulation. We hold only that GAC has failed to establish that Mr. Paladino satisfied either requirement of the regulation.

Because the Board's determination that Mr. Paladino was qualified to certify GAC's claim was not supported by substantial evidence, we vacate the Board's decision and remand the case with instructions to dismiss GAC's appeal from the CACO's denial of the claim.

█ GAC, however, is not without a remedy. Notwithstanding a holding that the Board lacked jurisdiction because certification was lacking, this court has held that a contractor may properly certify the claim and resubmit it to the contracting officer, and if denied relief the contractor may appeal either to the Board or to the Claims Court. *See Theon v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985); *see also Skelly and Loy v. United States,* 685 F.2d 414, 419, 231 Ct.Cl. 370 (1982) ("The proper course of action—for a contractor whose case is dismissed for lack of jurisdiction—is the following: (1) properly certify the

claim; (2) resubmit the claim to the contracting officer; and (3) if there is then an adverse contracting officer's decision, appeal either to the board (section 606) or directly to this court (section 609).") (footnote omitted). The record does not reflect GAC's reason for declining to submit a new certification in response to the government's motion to dismiss or at any time during the ensuing three years. We will, however, presume existence of a reason sufficiently strong to justify the GAC-induced expenditures of the overburdened resources of the Justice Department, the Board, and this court.

### VACATED AND REMANDED

PLAGER, Circuit Judge, with whom NEWMAN, LOURIE and RADER, Circuit Judges, join, dissenting from the Court's refusal to consider this case in banc.

I respectfully dissent from the Court's refusal to consider this case in banc and to affirm the Armed Services Board of Contract Appeals' (Board) jurisdiction to decide the case.[1] As discussed at the outset of the panel opinion, that opinion had a difficult gestation period, followed by a painful birth. In its original conception, the panel produced a nonprecedential opinion that I believed to be erroneous but, due to its nonprecedential nature, not broadly significant. Had the matter remained merely one of bad result the case might not warrant our continued attention. But by acquiescing in the Government's request for a precedential opinion, this court sets forth a major policy pronouncement that, in my judgment, is simply wrong. In view of the public interest in this issue (as evidenced by the briefs of *amici* cited in the panel opinion) and the importance of its correct resolution to the boards and courts that hear these cases,[2] I think it appropriate

---

1. Under Fed.R.App. P. 35(a), a majority of the active judges of this court may, *sua sponte,* order a case to be reheard in banc. In this case, in response to a suggestion from several members of the court, a majority of the active judges did not so order.

2. *See, e.g., Sun Cal, Inc. v. United States,* 21 Cl.Ct. 31, 33–34 (1990) (finding a vice-president and chief financial officer qualified to certify); *Westech Corp. v. United States,* 20 Cl.Ct. 745, 751–53 (1990) (finding certification of claim by former employee of the contractor in combination with a subsequent ratification by the corporation president to be ineffective); *Western Em-*

that I state why I believe the decision is wrong.

The panel's pronouncement regarding what is required to certify a claim is not good law. The statute, 41 U.S.C. § 605(c)(1) (1988), requires that "the contractor" certify the claim. The purpose of the certification requirement is clear from the legislative history—the certifier must be an official able to speak for and bind the company regarding the claim. In addition, the legislative history suggests that this mechanism is to prevent fraudulent claims and encourage settlements. Thus, Congress seemingly wanted the person who makes the final decision concerning submission of a claim to be someone with reasonably broad oversight of the company's affairs and not merely a person with an emotional investment in the dispute. Such a person could best determine whether the claim was justified or able to be settled. Indeed, the Office of Management and Budget's Office of Federal Procurement Policy (OMB/OFPP) rule, describing eligible certifiers as including the chief executive officer (CEO) who heads the entire company, clearly suggests that no personal involvement in the routine paperwork administration of the contract is expected.

Courts appropriately accord considerable weight to interpretations of an agency with expertise when a statute is ambiguous. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). As we said in *Wilson v. United States,* 917 F.2d 529, 535–36 (Fed.Cir.1990) (citing *Chevron* 467 U.S. at 842–44, 104 S.Ct. at 2781–83), "when a statute is silent or ambiguous with respect to the specific issue, the administrative agency's interpretation, if reasonable, is to be followed by the court." Courts thus acknowledge the proper role for experts in policymaking.

At the same time, we should refuse to enforce agency interpretations when the statute is not ambiguous and when the interpretation neither demands expertise of an agency nor accords with the thrust of the statute. *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986). As was said in *Office of Communication of the United Church of Christ v. Federal Communications Comm'n.,* 707 F.2d 1413, 1422–23 (D.C.Cir.1983), "[t]o do otherwise would risk diluting the judiciary's power to stand guard against bureaucratic excesses by ensuring that administrative agencies remain within the bounds of their delegated authority. Indeed, it is the quintessential function of the reviewing court to interpret legislative delegations of power and to strike down those agency actions that traverse the limits of statutory authority."

The term "contractor" as used in 41 U.S.C. § 605 of the Contract Disputes Act (CDA) is not ambiguous. The statute simply leaves unspecified the exact title of the certifying official appropriate in a given case and in a given corporate structure. Even assuming agency interpretation was needed, the regulation, 48 C.F.R. § 33.207(c)(2) (1989), by limiting the range of officials able to certify as narrowly as it does, goes beyond reasonable interpretation and denies to a wide range of corporate officials that which the statute grants them. Furthermore, § 2 of the CDA defines the term "contractor." Congress, by defining "contractor" even in general terms left no room for agencies to adopt stricter or looser definitions of the term. This court should give force to Congress's language and intent.

The statute delegates *to the contractor* the power to designate who speaks for it;

---

*pire Constructors, Inc. v. United States,* 20 Cl.Ct. 668, 671 (1990) (finding a project manager to be a "senior company official in charge at the contractor's plant"); *Triax Co. v. United States,* 20 Cl.Ct. 507, 510–14 (1990) (on reconsideration, an order finding a certification invalid where the senior company officials certifying were not also in charge of the plant was vacated); *National Surety Corp. v. United States,* 20 Cl.Ct. 407, 410–12 (1990) (finding certification by an officer of the parent corporation to be ineffective); *Al Johnson Constr. Co. v. United States,* 19 Cl.Ct. 732, 736 (1990) (finding use of "a senior company official" rather than "the senior company official" in regulation to indicate that certification must be by "a senior official within the company, not just the most senior person on site.")

it does not grant to OMB the power to intrude itself into the myriad versions of corporate organizational structures. For example, a valid regulation might specify that the officer who certifies for the contractor must be one whose position within the contractor's organization is such that he or she has authority to speak for and to bind the corporation concerning the matters involved in the claim. By contrast, a regulation that stated that corporate vice-presidents could *never* certify a claim would not be consistent with the statute and therefore would not be valid—this regulation as construed by the panel does essentially that, and it is not.

The facts of this case demonstrate the unreasonableness of OMB's regulation, at least as it is construed by the panel. The subject matter of the claim is whether certain dividend payments on stock awarded to the contractor's employees are includable elements in cost reimbursable contracts. The officer certifying the claim was the corporation's Senior Vice President and Treasurer. Obviously, such an official would be among the most knowledgeable and responsible in assessing such a claim. Can it be said that the Congress had in mind that *only* the civil engineer who is the plant manager could certify the claim if the president of the company was busy doing other things? (What if there are a number of plants affected? What if there were a "Senior Vice President for Certifying CDA Claims"?) Or, if the manager at one of many plants of a large corporation was ill, can it be said that Congress intended to require that the CEO, located in corporate headquarters 2000 miles from the plant, personally certify a $55,000 claim on a $400 million contract?

The Board of Contract Appeals which heard this case considered the Senior Vice President a proper certifier on the grounds that he met the regulation's description of an officer having overall responsibility for the conduct of the contractor's affairs, in this case, financial affairs. The panel disagreed, concluding that the regulation means affairs *in toto*, i.e., the CEO. Either the panel or the regulation is wrong. In either case, the rule announced by the panel should not be allowed to become a binding precedent of this court.

If the Government is genuinely in doubt about the authority of the certifier to bind the contractor, it is a simple matter for the Government to challenge this authority before the Board. It would be equally easy for the contractor to then verify that authority. But that is not what the Government seeks. The Government's position instead sets a trap for the unwary, requiring that claims falling short of its technical trap be re-started, thus giving the Government more years to avoid paying its just debts, if they are ultimately found to be just, and to deny the contractor the interest on the money due that the statute requires be paid. The large defense and other contractors who regularly do business with the Government, and who have the legal resources to closely follow the arcane requirements laid down in this area, will find the certification process imposed by this decision onerous but manageable. It is the small companies who seldom do business with the Government and who can least afford delayed payments with no interest paid for the delay, who likely will be caught and most hurt by this construction of the regulation. This court should not countenance any such distortion of the remedial purposes of the Contracts Dispute Act.

Finally, the court lets pass an opportunity to correct what I consider a long-standing error, judicially created, regarding the jurisdiction of the boards and courts which hear these cases. The panel opinion holds that the failure to properly certify the claim deprives the Board, and therefore this court, of jurisdiction over the cause. But failure to properly certify a claim under the CDA does not speak to subject matter jurisdiction—it merely means that the particular claimant has failed to state a claim for which, under the terms of the statute, relief may be granted. Subject matter jurisdiction over CDA claims is determined by statute granting that jurisdiction to specified boards and courts. A party's failure to do all that is required to certify a claim goes only to that party's

entitlement to relief. To confuse the two creates not only analytical difficulties, but practical ones as well. Admittedly, the panel is correct that the error is longstanding (see the discussion under *Jurisdiction* in the panel opinion), but that is no reason to continue its perpetuation since no investment expectations are likely to have been made in reliance on it. This whole area could benefit from a thorough reexamination by the court in banc.