996 F.2d 317
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant,
v.
Michael P. W. STONE, Secretary of the Army, Appellee.
 No. 91-1383.
 United States Court of Appeals, Federal Circuit.
 April 5, 1993.
 
 Before NIES, Chief Judge, and PLAGER and ALARCON,* Circuit Judges.
 PLAGER, Circuit Judge.
 
 
 1
 Hartford Accident & Indemnity Company (Hartford) appeals from a decision of the Armed Services Board of Contract Appeals (ASBCA or Board).[1] Hartford, a surety who had taken over for a defaulting principal contractor, had appealed two claims to the ASBCA, after receiving no satisfaction from the contracting officer. The Board dismissed Hartford's appeal. The first claim, alleging overpayment to the defaulting contractor, was dismissed for lack of proper certification. The second claim, regarding replacement of a lost check, was dismissed on the ground that Hartford did not even purport to have "submitted" the claim pursuant to the Contract Disputes Act. We reverse-in-part, vacate-in-part and remand for further consideration.
 
 BACKGROUND
 
 2
 In September 1980, the New York District, Army Corps of Engineers (Army or Government) awarded a construction contract to Juno Construction Corporation and Main Power & Electric Wiring Corporation, A Joint Venture (Juno). The contract dealt with construction of an Armed Forces Reserve Center in Middletown, New Jersey. Hartford was Juno's surety on the performance bond for the contract.
 
 
 3
 Juno later defaulted on the contract, and its right to proceed under the contract was terminated by the Government on October 28, 1982. On December 2, 1982, Hartford, as surety, assumed the remaining rights and obligations of Juno pursuant to a takeover agreement executed in the form of a Change Order. The agreement was signed on behalf of Hartford by Stephen G. Pazar (Pazar), a regional bond claims manager. Pazar then supervised the performance of the work done pursuant to the agreement.
 
 
 4
 Substantial completion of the construction project was accomplished on April 5, 1984. On November 12, 1984, Hartford sent a letter to the Army requesting issuance of replacements for two checks, in the amounts of $20,633 and $42,200, which were lost in the mail or otherwise misplaced. The Army's response notified Hartford that an effort was being made to trace the two checks.
 
 
 5
 On May 13, 1985, Hartford submitted a claim to the contracting officer for $235,896, an amount allegedly overpaid to Juno by the Government. Pazar certified and submitted the claim for Hartford.
 
 
 6
 The contracting officer denied the overpayment claim on September 9, 1988. In the meantime, having heard nothing about the tracing of the checks, Hartford again inquired about replacement checks, via letters to the Army District Counsel dated June 23 and August 11, 1988. On November 4, 1988, Hartford requested a "final decision" from the contracting officer on the replacement check issue, for the check written for $42,200.[2]
 
 
 7
 On November 28, 1988, Hartford appealed to the ASBCA the denial of its claim for the overpaid funds. Hartford also attempted to appeal its lost check claim, despite the fact that the contracting officer had not rendered a decision on the issue.
 
 
 8
 The ASBCA issued an order on January 16, 1991, which sua sponte questioned the certification of Hartford's overpayment claim. The order directed Hartford to show that Pazar was qualified to certify the claim, as required by 48 C.F.R. § 33.207(c)(2). Pursuant to the regulation, Hartford was told to demonstrate that Pazar was "a senior company official in charge at the contractor's plant or location involved," or "an officer ... of the contractor having overall responsibility for the conduct of the contractor's affairs."
 
 
 9
 Hartford referenced Pazar's deposition testimony that had been part of his certification that he had signed the takeover agreement on Hartford's behalf. The ASBCA then ordered the Government to address the jurisdictional question, and gave Hartford a chance to respond. Hartford again merely referred to Pazar's deposition testimony, pointing in particular to the sections referring to Pazar's sole responsibility at Hartford for the takeover contract and for completion of the construction project.
 
 
 10
 The ASBCA found Hartford's responses to be inadequate, and on February 19, 1991, ordered Hartford to file any further response to the jurisdictional issue. On February 25, Hartford submitted the certification of a Hartford assistant vice president, Robert J. Mathieu, who attested that Pazar was in charge of the completion and that no one in Hartford's home office had any personal knowledge which could form the basis of certification of the claim.
 
 
 11
 The ASBCA remained dissatisfied, and on February 28, 1991, found Hartford to be nonresponsive on the issue of jurisdiction. Both parties were given thirty days to file any additional documents in the proceeding.
 
 
 12
 On March 21, 1991, Hartford sent a letter alleging in detail that Pazar "is a 'senior company official in charge at the ...... location involved' and, therefore, his certification satisfies the requirements of [48 C.F.R. 33.207(c)(2)(i) ]." Hartford argued that Pazar had actual authority to certify the claim on behalf of Hartford, and that he satisfies the regulatory requirements.
 
 
 13
 On May 31, 1991, the Board dismissed Hartford's appeal for lack of jurisdiction, on the ground that Hartford failed to prove that Pazar qualifies to certify claims. The Board held that "[t]he record does not reflect where Mr. Pazar's job falls within the overall hierarchy of the company, or how extensive his responsibilities are compared to others."
 
 
 14
 The Board stated that, under 48 C.F.R. 33.207(c)(2)(i), "the certifying official must be both '[a] senior company official' and 'in charge at the contractor's plant or location involved.' United States v. Grumman Aerospace Corp., 927 F.2d 575, 580 (Fed.Cir.1991). In determining whether a certifying official is a senior company official, we look to his or her rank and managerial responsibilities within [Hartford]'s organization." The Board concluded that "[n]either Mr. Mathieu's certification ... [n]or Mr. Pazar's deposition contain an unqualified statement that Mr. Pazar is a senior company official."
 
 
 15
 The Board also dismissed the replacement check claim "since it is clear that [Hartford] did not purport to submit a claim pursuant to the Contract Disputes Act of 1978 (CDA), with respect to this matter and that the contracting officer did not issue a final decision as to it." The Board mentioned, but did not reach, the Government's argument that the claim does not relate to a contract as contemplated by the CDA.
 
 DISCUSSION
 
 16
 In its appeal to this court, Hartford argues that the Board erred in dismissing its claims because Pazar clearly was eligible, under the regulation, to certify Hartford's claim for the alleged overpayment to Juno; and because Hartford's appeal of the replacement check claim was properly before the Board. The Board, argues Hartford, should not have dismissed that claim even if its dismissal of the first claim, on the certification issue, was correct. We will address the two claims in turn.
 
 The Overpayment Claim
 
 17
 The ASBCA dismissed Hartford's claim that Juno had been overpaid, and that funds were in fact due Hartford, on the ground that that claim had not been properly certified when it was presented to the contracting officer. The Board relied in part on Grumman, supra.
 
 
 18
 In Grumman, this court was faced in part with the following questions: 1) whether the regulation at issue, Federal Acquisition Regulation 33.207(c)(2), 48 C.F.R. § 33.207(c)(2) (1989), is a reasonable interpretation of the certification requirement of the CDA, 41 U.S.C. § 605(c)(1) (1988); and 2) whether the contractor, Grumman, had complied with the statute's certification requirement, as implemented by the regulation. Grumman, 927 F.2d at 578.
 
 
 19
 This case arose, and is decided, under the statute as it was prior to the 1992 amendments. See Federal Courts Administration Act of 1992, § 907(a)(2), Pub.L. No. 102-572, 106 Stat. 4506, 4518 (1992).
 
 
 20
 The statute at issue provided at the relevant time:
 
 
 21
 A contracting officer shall issue a decision on any submitted claim of $50,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.
 
 
 22
 41 U.S.C. § 605(c)(1) (1988). The implementing regulation provided, regarding certification:
 
 
 23
 If the contractor is not an individual, the certification shall be executed by--
 
 
 24
 (i) A senior company official in charge at the contractor's plant or location involved; or
 
 
 25
 (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.
 
 
 26
 48 C.F.R. § 33.207(c)(2) (1991).
 
 
 27
 The court in Grumman[3] found the regulation to be a reasonable interpretation of the statute. It then applied the regulation to the facts before it, and held that Grumman had not complied with the requirements for certification. The court reasoned that the purported certifier of the claim for Grumman, Mr. C.A. Paladino, Senior Vice President and Treasurer, did not fit either description in the regulation. The court noted that
 
 
 28
 The first description [subsection (c)(1) ] demands that the certifying senior company official have both primary responsibility for the execution of the contract and a physical presence at the location of the primary contract activity.
 
 
 29
 927 F.2d at 580. The court held that Paladino was not "in charge"--he reported at least to one other official of the company, who testified that it was he, rather than Paladino, who made the ultimate decision to present the claim. The court also concluded, albeit in dicta, that Grumman had not established that Paladino "was physically present at the 'plant or location involved' in the performance of the contract."[4]
 
 
 30
 The facts of the present case lead us to a different result. While it is true that, under subsection (c)(2)(i), the certifying official must be both a "senior company official" and "in charge at the contractor's plant or location involved," Grumman did not, and did not need to, discuss in detail just what it is that those terms mean--who is a "senior" official, who is "in charge," and just how much of a presence is required for one to be in charge "at the location."
 
 
 31
 There is no magic formula or language needed to fulfill those requirements--one must look to the circumstances involved. Clearly, in a case such as this when the contractor is a surety who took over for the defaulting original contractor, the surety 'becomes' the contractor under the agreement. The requirements for certifying a claim must be understood in that context. A "senior company official" must simply be someone with enough authority to act conclusively for and bind the company under the circumstances.
 
 
 32
 Likewise, whether that official is "in charge" is a matter of contextual setting. In the present situation, the official is not required to be the site supervisor in charge of the actual construction work--that person may well be a member not of the contractor's organization, but of the subcontractor. Here, in the contractor's organization as it stands under the facts before us, the term simply refers to that individual who, on behalf of the contractor, has responsibility for and oversees the activities at the site. Depending on the context, that person may or may not be "physically present" at the site on a daily basis, in order to satisfy his role and meet his responsibility within the contractor organization. Nevertheless, he may still be authoritatively "in charge" at the location for the contractor; that is all that is required by the regulation. If the buck stops there, he can sign for it, too.
 
 
 33
 The Board held that the record "does not reflect where Mr. Pazar's job falls within the overall hierarchy of the company, or how extensive his responsibilities are compared to others." The Board concluded that there was no "unqualified statement that Mr. Pazar is a senior company official." We disagree. Hartford alleged in its communications to the ASBCA that Pazar was "in charge" at the construction location, and that he was a senior company official. Pazar's deposition testimony, referred to again and again by Hartford, referred to Pazar's sole responsibility for the takeover contract and for supervision of completion of the construction. Mathieu's certification asserted that Pazar "is a senior claims official ... in charge of bond claims and completion of bond obligations, both as to performance and payment ...," and that Pazar "was and is in charge of the completion of the bond work of Juno Construction Co."
 
 
 34
 The Government and the ASBCA have not pointed to any evidence that conflicts with the allegations and testimony presented by Hartford. Pazar was senior enough within Hartford to have control of this particular contract and the concomitant construction. Thus, it is clear that in the present contextual setting, Pazar was a "senior company official in charge at the contractor's plant or location involved" as required by the regulation. Pazar was eligible to, and did, certify Hartford's overpayment claim.
 
 The Replacement Check Claim
 
 35
 The record before this court makes it clear that the issues concerning the requested replacement check were not much developed before the Board, and indeed, perhaps remained embryonic even through at least most of this appeal. None of the entities involved--Hartford, the Army, the contracting officer, or the Board--seems to have at any time understood or fully conceived just what it and the others concerned consider the issues to be. At a minimum, none fully addressed, or even acknowledged, the opposing view's latest (and arguably most pertinent) points or counterpoints. Instead, examination of the record unveils a series of side-stepping and zig-zagging, although in fairness much of it may well have been unintentional.
 
 
 36
 In the first instance, Hartford pursued the issuance of replacement checks via letters, over a span of at least close to four years, to the Army's Office of Counsel. Finally, Hartford requested a "final decision" of the contracting officer on November 4, 1988, regarding one of the checks. The record before us does not explain why the other check is no longer addressed; only the $42,200 amount seems to remain of concern. Hartford's letter notes that "[w]e would like to include this item in our appeal to the ASBCA [regarding the overpayment to Juno], but believe ... we must have the $42,200 item covered by a final decision to place the issue before the ASBCA...." Nevertheless, only 24 days later and without word from the contracting officer, Hartford included an appeal of the replacement check issue in its appeal regarding the overpayment.
 
 
 37
 The Government apparently responded that the replacement check claim did not relate to a contract within the contemplation of the CDA. (On the record before us, this argument is not at all fleshed out, referred to only in passing first in the Board's opinion, and then again in a footnote to the Government's brief.) The Government moved to dismiss the claim for lack of subject matter jurisdiction, arguing that the issue was one for the Treasury Department, subject to possible review under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The ASBCA, however, dismissed the issue for lack of jurisdiction on the grounds that Hartford "did not purport to submit a claim pursuant to the CDA with respect to this matter and that the contracting officer did not issue a final decision as to it."
 
 
 38
 In its initial brief to this court, Hartford confusingly argued that
 
 
 39
 Since that claim was for less than $50,000, it was not required to be certified under the Contract Disputes Act. See 41 U.S.C. § 605(C)(1). Despite that, the ASBCA dismissed both the First and Second Counts, finding the Hartford had failed to properly certify the claim.
 
 
 40
 The Government, in its brief, correctly stated that
 
 
 41
 Hartford completely misreads the board's decision as regards its lost check claim. Contrary to Hartford's understanding ... the board did not dismiss this count of its complaint because Hartford failed to certify the claim. Rather, the board found, albeit incorrectly, that Hartford had never purported to submit a claim to its contracting officer pursuant to the CDA."
 
 
 42
 The Government argues that, despite the board's incorrect assertion that Hartford had not submitted a claim to the contracting officer, the board's dismissal of the issue was nevertheless correct:
 
 
 43
 Because the board's jurisdiction is dependent upon the issuance of a final decision (or the deemed denial of a claim if the contracting officer fails to issue a decision within sixty days after a claim for under $50,000.00 is filed), the board did not possess jurisdiction to entertain this case. Therefore, although Hartford in fact submitted a "claim" to its contracting officer concerning the lost check, it did not wait either for a final decision of the contracting officer, or for sixty days to pass before filing its complaint before the ASBCA, and the board lacked jurisdiction to consider Hartford's complaint.
 
 
 44
 Clearly, the government considered Hartford's letter of November 4, 1988, to the contracting officer to be Hartford's purported submission of a claim on the issue.
 
 
 45
 In its response brief, however, Hartford added another wrinkle, apparently for the first time in all of the proceedings to date. Hartford's position was not explained to be that the letters dated November 12, 1984, June 23, 1988, and August 11, 1988 each satisfy the regulatory requirements for a "claim." Thus, Hartford asserts that a claim was filed as early as 1984 and again as late as August 1988. The sixty day waiting period is clearly satisfied, argues Hartford. Hartford further argues that the Government's suggestion that the ASBCA lacked subject matter jurisdiction was not decided by the ASBCA, and thus is not properly before this court. Hartford argues that the issue should be remanded to the ASBCA for further proceedings.
 
 
 46
 At oral argument, neither party addressed this issue. Both parties stressed instead the certification issue regarding the overpayment claim.
 
 
 47
 Subject matter jurisdiction is, of course, a question of law which often depends on factual underpinnings. As a question of law, the issue is freely reviewable by this court, whether or not the ASBCA properly addressed the issue. However, the record before us clearly demonstrates only one thing regarding this issue--that in this case, the facts, arguments and respective positions on the issue are not clear. No party or tribunal had the benefit, at any time, of having before it the opposing sides' responsive arguments.
 
 
 48
 We are thus bereft of the benefit of useful debate and analysis by the parties and the lower tribunal. Lacking this, we could try to hypothesize what we think would be the parties' responses and rebuttals to each other's postulations regarding the relevant facts and law. Or we could request the parties to submit additional briefs on the issue. However, in light of our remand to the ASBCA of the overpayment claim, we conclude that it is more efficient in this case to vacate the ASBCA's disposition of the replacement check claim, which as we discussed the government concedes was based on an erroneous assertion, and remand the issue for further proceedings.
 
 CONCLUSION
 
 49
 We reverse the decision of the ASBCA regarding certification of the overpayment claim. We vacate the decision regarding the replacement check claim. We remand both claims to the ASBCA for further proceedings consistent with this decision.
 
 COSTS
 
 50
 Each party to bear its own costs for this appeal.
 
 
 51
 REVERSED-IN-PART, VACATED-IN-PART, and REMANDED
 
 
 
 *
 The Honorable Arthur L. Alarcon, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 No. 38023, May 31, 1991
 
 
 [2]
 There is no indication in the record before this court why replacement of the second check was not further pursued; that issue is nonetheless not before us
 
 
 [3]
 Originally, the panel issued a non-precedential opinion deciding the case. The Government requested that the opinion be rendered precedential because of "widespread legal interest," while the contractor filed a "Petition for Rehearing and Suggestion for Rehearing In Banc." The full court declined to take the matter for in banc consideration, and the panel issued a precedential opinion which adhered to the original result. We refer of course to the latter, precedential opinion
 
 
 [4]
 The court in Grumman also addressed the alternate prong of the eligibility provision, regarding "an officer or general partner of the contractor." However, that prong is not at issue in the present case; we need not discuss it