ALEMAN FOOD SERVICES,
INC., Plaintiff,

v.

UNITED STATES, Defendant.

Nos. 424–87C, 91–970C.

United States Claims Court.

Oct. 11, 1991.

Donald P. Young, Washington, D.C., attorney of record, for plaintiff; Jeffrey B. Mulhall, of counsel.

Paul D. Langer, Dept. of Justice, Civ. Div., with whom were Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director, Commercial Litigation Branch, attorneys of record, for defendant.

## OPINION

HORN, Judge.

This case is before the court on the defendant's Motion to Dismiss, pursuant to RUSCC 12(b)(1), for lack of subject matter jurisdiction. The defendant contends that the plaintiff failed to properly certify its claims to the contracting officer before filing in this court, in accordance with the requirements of the Contracts Dispute Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988). The plaintiff's Response alleges that Mr. Albert Aleman, Aleman Food Service, Inc.'s Secretary/Treasurer, properly certified the claims on behalf of the company. For the reasons stated more fully below, the defendant's motion is DENIED.

## BACKGROUND

In the eleventh and a half hour, on October 1, 1991, just over three weeks before the commencement of the trial, and just immediately before the pretrial filings were due in these consolidated cases, the defendant filed a Motion to Dismiss for lack of jurisdiction in both cases 424–87C and 91–970C. The government alleged that the claims at issue were not properly certified because they were not signed by a person possessing the requisite signatory authority. What makes the situation all the more egregious is that one of the cases was filed in 1987 and the defendant's attorney told

this court he became aware of the certification issue only a few weeks before filing the Motion to Dismiss.

The 1987 case, filed on June 23, 1987, was held in abeyance and ultimately consolidated, at the request of the government, with a case filed on March 1, 1991, because the claims in the two cases arose out of the same contract. After protracted discovery, including some difficulty completing the discovery, a pretrial schedule for both cases was set by the court at a status conference on June 26, 1991. A written confirmation of the pretrial schedule was issued by the court in an Order, dated July 3, 1991. The pretrial Appendix G filings were scheduled to be due to the court on September 30, 1991. Eight days were set aside for the trial, to commence on October 23, 1991. An earlier postponement of the trial commencement date in the 1987 case previously had been granted by the court in order to consolidate the two trials, at the request of the government, although opposed by the plaintiff.

Just prior to the filing of the government's Motion to Dismiss, the court had been informed that the parties were engaged in active settlement negotiations and that there might be no need for the trial to take place. The court, therefore, was more than surprised to receive the defendant's Motion, as apparently was the plaintiff. It is not unreasonable for the court, and for the plaintiff, to expect that if a jurisdictional defense was to be raised by the defendant, especially in the case filed in 1987, it should have been raised long before now. This is true regardless of whether the parties and the court were waiting for the second, related case to ripen so that it could be consolidated with the earlier filed case. Even the 1991 case, filed on March 1, 1991, has been active for more than seven months, certainly enough time to uncover an alleged certification defect. In addition, the government attorney, who is responsible for both of the Aleman cases, entered his notice of appearance in the 1987 case on September 11, 1990, and the deposition testimony to which he cites in support of his allegation that Albert Aleman did not possess the required authority to sign the certification, was taken more than three years ago, in September, 1988.

Regardless of the lateness of the hour, however, this court recognizes that lack of subject matter jurisdiction may be raised at any time during the course of the proceedings. *See Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), *reh'g denied* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986). Therefore, the court was forced to review the defendant's Motion and to allow the plaintiff an opportunity to respond. Moreover, a court without jurisdiction is a court without jurisdiction; and the defendant's dilatory tactics do not change the inability of the court to review a case which is not properly before it. Some might argue the equities of the situation and suggest that the defendant should be penalized and deemed to have waived the defense. Such an argument is difficult to sustain against the United States, given the doctrine of sovereign immunity. Fortunately for the court, no such evaluation need be undertaken here. Based on the pleadings presented to the court and the oral representations offered to the court by both parties, the court finds that defendant's Motion to Dismiss should be denied and that the certifications tendered by the plaintiff in both claims under the contract are valid, as signed.

Immediately following receipt of the defendant's Motion to Dismiss, the court held a status conference at which both parties appeared by telephone. During the conference, an expedited briefing schedule was set up by which the plaintiff was given until October 2, 1991 to respond and, if it wished to, the defendant would have until October 3, 1991 to reply. A status conference/oral argument was scheduled and held over the telephone, with a recorder present, at 10:00 a.m. on the morning of October 4, 1991. At the status conference on October 4, 1991, the parties were each given an opportunity to present their respective positions and the court asked questions of both parties. At the status conference, the court committed to issue an early oral decision, to be followed with a written

decision prior to the commencement of the trial. Although the government requested to stay the case, the court refused to change the date of the trial or to change the dates the pretrial submissions were due to the court.

At the October 4, 1991 conference, the court issued an Opinion from the bench, which, for the reasons stated more fully below, denied the defendant's Motion to Dismiss, and denied the defendant's application for a stay of the proceedings. The court also indicated to the parties that the court would decline to certify the denial of Defendant's Motion to Dismiss to the United States Court of Appeals for the Federal Circuit because it felt that the decision to deny the government motion is fact specific to the instant case, and, therefore, not of a precedential nature sufficient to warrant certification. Moreover, the court also believes, although the circuit court might disagree, that the decision it issued orally at the conference, and which is set to paper in the instant Opinion, is correct and not of a sufficiently tenuous nature to warrant certification.

During the October 4, 1991 conference, the court requested the plaintiff to search for and to provide the court and the defendant with several documents, if they were locatable. These documents included the Bylaws of Aleman Food Service, Inc, organization charts of the corporation and any resolutions of the Board of Directors of the corporation which might shed further light on the corporate structure of Aleman Food Service, Inc. The plaintiff provided the documents to the court later that same day in a filing titled "Plaintiff's Submission in Response to the Court Order of October 4, 1991."

The court also committed to the parties at the conference on October 4, 1991 that after receipt and review of the documents submitted by the plaintiff, it would inform the parties, prior to the close of that business day, whether or not review of the documents, in any way, operated to alter the court's Opinion, issued orally from the bench, earlier that day. At approximately 5:00 p.m. on October 4, 1991, the court held another joint, telephone conference with both parties. Counsel for the defendant was given an opportunity to comment on the plaintiff's most recent submissions. The court then indicated that review of the plaintiff's submissions did not result in a need for the court to revise the Opinion it had issued earlier that day. Moreover, the court indicated that the pretrial submissions would be due on schedule, as detailed in the court's Order, dated July 3, 1991, and as modified by the court to extend the due date an additional week at the request of the parties.

FACTS

There is no dispute as to the relevant facts. In the plaintiff's Response to the Defendant's Motion to Dismiss for Lack of Jurisdiction, the plaintiff stated that "for the sole purpose of responding to the Government's Motion, Plaintiff essentially accepts Defendant's Statement of the Case with one notable exception." The exception is to that part of the defendant's brief which alleges that Mr. Albert Aleman was not competent to certify claims for the plaintiff and, therefore, that this court lacks jurisdiction.

The Articles of Incorporation of Aleman Food Service, Inc. were executed by Mr. Albert Aleman, Mrs. Adelaide Aleman, and Mr. Alfonso Aleman on May 1, 1979. Mr. Albert Aleman (Secretary/Treasurer) and his brother, Mr. Alfonso Aleman (President), each own 50 percent of the outstanding stock in Aleman Food Service and serve as the only corporate officers. Mrs. Adelaide Aleman, mother of Albert and Alfonso Aleman, appears no longer to be involved with the day-to-day operation of the company. Presently, there are no Vice Presidents at Aleman Food Service, Inc.

On November 19, 1985, the plaintiff, Aleman Food Services, Inc., a Texas corporation, entered into a contract (No. DTCG–39–85–C–00338) with the United States Coast Guard to provide full food services at the Coast Guard Academy in New London, Connecticut.

Alleging various express or constructive changes to its food service contract, the

plaintiff, on February 13, 1987, submitted a claim for $620,926.64 to the contracting officer at the Coast Guard Academy. That claim, which concerned the first nine-month period of contract performance, was signed by Albert Aleman, the Secretary/Treasurer of Aleman Food Service. When the contracting officer did not issue a decision within 60 days of receipt of this claim, the plaintiff deemed its claim denied and brought suit in this court on July 15, 1987, by filing the complaint in case No. 424–87C. That complaint contains eleven separate counts for additional personnel, repair and maintenance of Government-furnished equipment, providing an extra storeroom, extra supplies for cleaning and maintenance, food ordered, but not eaten, "extraordinary extermination," uniforms, consultants for contract interpretation, erroneous contract discrepancy reports, box lunches, and general and administrative costs.

On October 25, 1990, the plaintiff submitted another claim to the contracting officer at the Coast Guard Academy for $465,162.62 on the same contract. That claim, which concerned the second ten-month period of contract performance, again was signed by Albert Aleman. When the contracting officer did not issue a decision within 60 days of receipt of this claim, the plaintiff deemed its claim denied and brought this second action on March 1, 1991, by filing the complaint in No. 91–970C. This complaint concerns nine separate counts for personnel costs, additional food costs, equipment maintenance costs, contract discrepancy costs, cost of box lunches, separate facility costs, breach, general and administrative costs, and profit. The cases numbered 424–87C and 91–970C have been consolidated, and are currently scheduled for trial beginning on October 23, 1991.

The single issue before this court is whether Albert Aleman, Aleman Food Service's Secretary/Treasurer, was an appropriate person under the applicable statute and regulations, to certify the plaintiff's claims.[1] The defendant contends that Albert Aleman, as Secretary/Treasurer, did not possess the proper authority to certify claims for Aleman Food Service. The plaintiff argues that, as one of two corporate officers in this closely held, family run corporation, Albert Aleman was an officer having overall responsibility for the conduct of the contractor's affairs, thus making him competent to certify the claims.

## DISCUSSION

The statute under which the plaintiff invokes the jurisdiction of the United States Claims Court to entertain its claims is the Contracts Dispute Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988). As a prerequisite to litigation of government contract claims in this court, the CDA requires that a contractor's claim be submitted to the contracting officer for decision. 41 U.S.C. § 605(a). In addition, the CDA requires:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1).

The implementing regulation, 48 C.F.R. § 33.207 (1990), defines two categories of people who are entitled to certify a claim on behalf of a corporate contractor. The first is "[a] senior company official in charge at the contractor's plant or location involved." 48 C.F.R. § 33.207(c)(2)(i). The other authorized person under the FAR is "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." 48 C.F.R. § 33.207(c)(2)(ii). The government argues that Albert Aleman, as Secretary/Treasurer of Aleman Food Service, Inc., lacked the proper authority to certify

---

1. 48 C.F.R. § 33.201 (1990) defines a claim as a "... written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract." 48 C.F.R. § 33.201 (1990).

claims on behalf of the company because he did not have the requisite "overall responsibility" for the management of company affairs. In the instant case there is no dispute that Albert Aleman was not on site in order to qualify under 48 C.F.R. § 33.207(c)(2)(i).

The purpose of the CDA is to foster the prompt, efficient resolution of disputes between private contractors and the government. S.Rep.No. 1118, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235. In addition, the certification requirement was enacted for the purpose of holding contractors personally liable for fraudulent claims. *See Skelly & Loy v. United States,* 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982); *Donald M. Drake Co. v. United States,* 12 Cl.Ct. 518, 519 (1987). The contractor's certification assures that the claim accurately reflects the estimated value of the case. *W.H. Moseley v. United States,* 230 Ct.Cl. 405, 407, 677 F.2d 850, 852 (1982), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

The legislative history of the CDA evidences the importance Congress put on requiring that a claim be certified. Prior to the enactment of the certification requirement, Admiral Hyman G. Rickover stated the importance of discouraging the submission of unwarranted contractor claims and proposed the addition of the certification requirement. *Contracts Dispute Act of 1978: Joint Hearings on S.2292, S.2787 & S.3178 Before the Subcomm. on Federal Spending Practices and Open Government of the Senate Comm. on Governmental Affairs and the Subcomm. on Citizens and Shareholders Rights and Remedies of the Senate Comm. on the Judiciary,* 95th Cong., 2d Sess. 21 (1978). Admiral Rickover proposed that the Act should:

> [r]equire as a matter of law that prior to evaluation of any claim, the contractor must submit to the Government a certificate signed by a senior responsible contractor official, which states that the claim and its supporting data are current, complete and accurate. In other

words, you put the contractor in the same position as our working man, the income tax payer who must certify his tax return.

*Id.* at 21. Admiral Rickover contended that subjecting contractors to financial risk would greatly deter the submission of false or inflated claims. See *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 15, 673 F.2d 352, 355 (1982).

The current state of the law is that court's subject matter jurisdiction in government contract cases is, in part, defined by whether or not the certification is validly executed under the applicable statute and regulation. *See National Surety Corp. v. United States,* 20 Cl.Ct. 407, 409–10 (1990). Moreover, the courts have found that in determining the validity of the certification, the regulation should be strictly construed. *Id.,* at 409. Therefore, following enactment of the CDA, " '[u]nless that [certification] requirement is met, there is simply no claim that the court may review under the Act.' " *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir.1983) (quoting *Paul E. Lehman,* 673 F.2d at 355); *see also National Surety,* 20 Cl.Ct. at 410; *Arlington Alliance, Ltd. v. United States,* 231 Ct.Cl. 347, 357, 685 F.2d 1353, 1359 (1982).

The defendant relies, in large part, on the Federal Circuit's decision in *United States v. Grumman Aerospace Corp.,* 927 F.2d 575 (Fed.Cir.1991). In that case, the Federal Circuit held that the private contractor's claim was not properly certified because the contractor's Senior Vice President and Treasurer lacked "overall responsibility" for the conduct of the contractor's affairs within the meaning of 48 C.F.R. § 33.207(c)(2)(ii). *Id.* at 580–81. Based upon its holding in *Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426 (Fed. Cir.1989), the Federal Circuit determined that a corporate official whose responsibility is limited specifically to the financial aspects of a contractor's affairs is not the proper person to certify a claim. *Grumman Aerospace Corp.,* 927 F.2d at 580. Therefore, in *Grumman,* the Federal Circuit vacated the finding by the Armed Ser-

vices Board of Contract Appeals (ASBCA), and held that the Board's determination which found the Senior Vice President and Treasurer to be an official with "overall responsibility" was not supported by the evidence. *Id.* at 581.

The defendant seeks further to narrow the scope of 48 C.F.R. § 33.207(c)(2)(ii) by citing to a recent Claims Court decision in *KDH Corporation v. United States*, 23 Cl.Ct. 34 (1991). In that case, the Claims Court construed the holding in *Grumman* to require that:

> [t]he certifying official must be a senior company official with primary responsibility for the execution of the contract and physically present at the location, or a chief executive officer, or one of equivalent status, as the official with overall responsibility for the contractor's conduct of affairs.

*KDH*, 23 Cl.Ct. at 42. The defendant contends that, based on the Federal Circuit's holding in *Grumman*, and the Claims Court's interpretation of that holding in *KDH*, Alfonso Aleman, the President of Aleman Food Service, Inc., was the only person with "overall responsibility" for the conduct of company affairs and, therefore, the only person qualified to certify the claims under 48 C.F.R. § 33.207(c)(2).

The defendant argues that as Secretary/Treasurer, Albert Aleman held a position analogous to the position at issue in *Grumman* (Senior Vice President/Treasurer) which was found by the Federal Circuit to be insufficient to qualify as a certifying official and that he, certainly, could not qualify under the *KDH* standard. Therefore, the defendant contends, this court should find that Albert Aleman lacked the proper authority under the statute and regulations to act as the certifying official for Aleman Food Services.

The defendant's reliance on *Grumman* and *KDH* is not persuasive. Based on the facts presented in *Grumman*, the Federal Circuit determined that the Senior Vice President/Treasurer did not fit either of the categories which could be relied on as legitimizing a certifying official under 48 C.F.R. § 33.207(c)(2). *Grumman*, 927 F.2d at 580. The Senior Vice President/Treasurer in *Grumman* was described by the Federal Circuit as "certainly a 'senior company official,' but he was not 'in charge'." *Id.* The Senior Vice President/Treasurer reported to at least one other Grumman official, the Vice President/Comptroller, who testified that it was he, not the Vice President/Treasurer who made the decision to present the claim. *Id.* The Federal Circuit concluded that the Senior Vice President/Treasurer was responsible for nothing more than simply reporting whether certain costs were chargeable to the company's different government contracts. *Id.* Finally, testimony from the Board of Directors of Grumman established that Senior Vice President/Treasurer had overall responsibility for financial affairs, not overall responsibility for the conduct of the contractor's affairs in general. *Id.*

This court is much more sympathetic to, and in agreement with, the dissent in *Grumman*, 927 F.2d at 581–84. In the dissent, four judges of the Court of Appeals for the Federal Circuit indicated that the purpose of the certification requirement is to ensure that a claim is certified by a company official "able to speak for and bind the company regarding the claim." *Id.* at 582. Furthermore, the court disagrees with the decision in *KDH* to further narrowly define who are the corporate officials qualified to certify under the CDA and the FAR.

 This court does not believe that the intent of 48 C.F.R. § 33.207(c)(2) was to limit the number of officials in a corporation qualified to certify a claim to one individual in the corporate hierarchy or even to an individual equivalent to only one position description. The court agrees with the conclusions articulated in *Triax Company v. United States*, 20 Cl.Ct. 507, 512–13 (1990), that the regulation should not be read to mean that only a "chief executive officer" or a person with authority to overrule every action taken by any other individual in the contractor's organization may certify a claim. The regulation explicitly specifies "an officer or general partner of the contractor having overall responsibility

for the conduct of the contractor's affairs." This language suggests that there is, or could be, more than a single person competent to certify on behalf of a corporation under subsection (c)(2)(ii); otherwise, the drafters of the regulation would have been far more specific.

More recently, in *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996 (Fed.Cir.1991), the United States Court of Appeals for the Federal Circuit affirmed the conclusion that 48 C.F.R. § 33.207(c)(2) is not so limited as to restrict those competent to certify contractor claims to one. Referring to its decision in *Grumman*, 927 F.2d at 581, the Federal Circuit emphasized that a chief executive officer or one of equivalent status who, by title, clearly is a corporate officer with overall responsibilities, may certify a claim. *Newport News*, 933 F.2d at 999 n. 3.

In *Newport News*, the Armed Services Board of Contract Appeals (ASBCA) granted summary judgment to Newport News concluding that the claim was properly certified, and thus, it had jurisdiction to hear the case. The government appealed this decision to the Federal Circuit challenging only the ASBCA threshold ruling that certification was proper and therefore that it had jurisdiction to decide the claim. In response to Newport News' submission that its claim was certified by the Executive Vice President, the government offered "... no specific contentions that he [the Executive Vice President] was not a proper certifier under subparagraph (ii)." *Newport News*, 933 F.2d at 1000.

■ Although the *Newport News* case presented itself to the Circuit Court on an appeal by the United States of a grant of summary judgment to the plaintiff, and the case currently before the court is in the form of a Motion to Dismiss, the words of the Circuit Court are nonetheless appropriate here:

As the Board correctly reasoned, particularly in light of the information presented by Newport News, the government was required to submit some sort of evidence or specific, substantiated allegation that this corporation's Executive Vice President 'lacked the required responsibility at the time he executed the certification.'

*Newport News*, 933 F.2d at 1000. In a similar view, the court in *Triax* employed a burden-shifting approach which that court analogized to how issues regarding diversity jurisdiction are resolved. In *Triax*, the court wrote:

The burden-shifting approach employed when diversity jurisdiction is challenged lends itself well to resolving a challenge to claim certification under FAR 33.207(c)(2)(ii). Triax has made a *prima facie* showing that Messrs. Carter and Simmons are general officers of Triax under Utah law, *see* Utah Code Annotated § 16–10–45 (1953), and as such, the court presumes that they have overall responsibility for the conduct of Triax's affairs. Defendant has made no showing that either individual is a unique corporate officer under either state law or under Triax's bylaws, *lacking* such responsibility.

*Triax*, 20 Cl.Ct. at 512.

■ Although this court agrees that the certification requirements of the CDA are jurisdictional, this court also will not interpret the certification requirements so rigidly that ordinary business ventures will be brought to their knees and that the prospect of doing business with the government will become so unappealing that sensible businessmen will refuse to enter into business relationships with the sovereign, to the detriment of its citizenry.

This court is not one which favors the certification requirement in its current form, as it has been interpreted by the courts and parts of the government contract community. In fact, this court has previously made its position known in *Shirley Construction Corp. v. United States*, 23 Cl.Ct. 686 (1991). The need for some form of certification is understandable from the government's perspective in order to avoid false or inflated claims and to ensure that claims are submitted in good faith, and after consideration and careful calculation. The generally acknowledged, current state of the law, which holds that

failure to certify is jurisdictional, however, has tied this and other courts up in unnecessary knots. A very high percentage of all of the government contract cases filed in this court, and other trial courts, are first subjected to a Motion to Dismiss by the government on the basis of a failure to certify a claim, only to be filed in the same court following additional administrative procedures to conform with the certification requirements. The result, as pointed out in the *Shirley* case, is an inefficient use of resources by the courts, the plaintiffs and the government.

In general, this court is loath to put itself in a straight jacket and adhere blindly to a rigid, and perhaps unworkable, interpretation of the words "overall responsibility." At the same time, this court, as a general proposition, is unwilling to don the mantel more properly assigned to the Congress. If the Congress, after due deliberation, feels a certification requirement is necessary to reduce fraudulent claims, than the courts, absent a congressional decision to the contrary, should honor that decision. Although the court agrees that some form of a certification requirement may be advisable to ensure accountability for claims submitted, this court believes strongly that a certification requirement must and can be devised which does not also legislate the manner in which private business entities are forced to set up their corporate structure. The law should not be used to micromanage the private sector by, for example, imposing particular titles or responsibilities on business managers in order to qualify them to conduct business with the government.

This court firmly believes that the Congress chose its words carefully when it enacted the CDA, 41 U.S.C. §§ 601–613 (1988), without specifying a particular individual or corporate officer who must be the certifying official. Then, when the relevant section of the FAR, 48 C.F.R. § 33.207 (1990), was issued to further define the person appropriate to certify, the standard was still left deliberately vague with the use of the words an "officer or general partner" with "overall responsibility for the conduct of the contractor's affairs,"

without designating a particular title which must be found underneath the name of every certifying individual. The remaining silence on the part of the drafters, was intended to allow the corporate sector sufficient flexibility to run their businesses as they saw fit, while at the same time meeting the certification needs of the government.

■ It remains up to the trial courts to determine whether or not a particular individual did or did not have "overall responsibility" as a corporate officer to qualify him or her as a certifying official. It is not sufficient to look to the title of the certifying official alone to determine whether he or she is qualified to execute the certification. The courts should employ a familiar standard: the "totality of the circumstances," to determine whether, at the time the certifications were signed, the certifying officer possessed the requisite "overall responsibility" to legitimately submit the claims under his or her signature.

■ In the case now before the court, the defendant has argued that Albert Aleman, based on his title as Secretary/Treasurer, and the company bylaws and the remarks made by him at the deposition in September of 1988, could not, and in fact did not, possess the requisite "overall responsibility" sufficient to validate the two certifications signed by him on February 13, 1987 and on October 25, 1990. The government, however, has not offered the kind of hard evidence necessary to refute the representation by Albert Aleman that he had the requisite "overall authority," and that his title was not inconsistent with such authority. *See Newport News,* 933 F.2d at 998 n. 2.

Alfonso Aleman stated at his deposition that, as President, he is responsible to oversee the operation of the company, and answered "yes, ma'am" to a leading question regarding whether he was the final decisionmaker. However, Alfonso also testified that before any business decisions are made, "I usually check with my brother, Albert Aleman on everything." Furthermore, Alfonso Aleman's deposition testimo-

ny indicates that, as President, his responsibilities principally involve the overall marketing of the company. Alfonso Aleman stated he is responsible for the solicitation of contracts, targeting new activities and ventures, and insuring that Aleman Food Service retains its good name in the business community by maintaining relationships with the people that work for and with the company. He also testified that Albert Aleman, as Secretary/Treasurer, "operates mainly the contracts," which appear to constitute the principal business in which Aleman Food Services, Inc. is involved.

The testimony offered at the depositions of Alfonso Aleman and Albert Aleman regarding the allocation of responsibilities between the two of them is in some ways vague, incomplete and at times somewhat hard to follow.[2] Both testified that although they had each taken some college and advanced credits, neither had received any degree beyond the high school level.

In addition, the following colloquy during the deposition of Alfonso Aleman is enlightening:

"Q. Is there some division of duties in that he is involved mainly with the administration of the contract after an award whereas you might be involved—

A. Yes, ma'am.

Q. So you are the principal person involved in the preparation of a bid for a contract?

A. Well, we have several preparations of a bid. No, ma'am. I make the decision as to are we going to go out in that particular area, do we have anything else pertinent that we could possibly get in that area, how much would it cost us to go out there. As far as actually preparing the bid itself, my brother Albert handles most of that, ma'am.

Q. When you are making a decision on whether you are going to bid on a food service contract, for example, from whom do you receive information?

A. My brother Albert.

Q. So the individual at your company who gathers the information for you in order for you to make a decision on whether to bid the contract is your brother Albert?

A. Yes, ma'am...."

Albert Aleman testified that as Secretary/Treasurer his role "primarily is to go ahead and contractually administer all contracts for Aleman...." Albert Aleman further testified that he participates in the preparation of bids and proposals and maintains an active role throughout the administration of those contracts awarded to the company. Aleman Food Service cannot be compared to Grumman Aerospace. Aleman Food Service is a closely held, family run company. Albert and Alfonso Aleman are the sole, co-equal owners of the company. Moreover, based on the facts presented to this court, it is not reasonable to conclude that Albert Aleman had any less of a say in the operation of the company than his brother Alfonso.

The affidavits submitted by the plaintiff to support its opposition to the Defendant's Motion to Dismiss further erode the defendant's position. The deposition testimony of Albert Aleman and Alfonso Aleman given three years ago is supported by affidavits sworn out by both brothers on October 2, 1991. Albert Aleman stated in his affidavit, which was confirmed by Alfonso Aleman, that his responsibilities in regard to the day-to-day management of the company "has been to administer all legal matters and contracts, negotiate all contracts and union agreements, file and administer all claims, and to handle all financial matters." Moreover, Albert Aleman stated that he is specifically authorized to prepare, execute, file and negotiate all claims on behalf of Aleman Food Service. Albert Aleman's affidavit also confirms that Alfonso Aleman is primarily responsible for the marketing of the company, and that any major business decisions concerning the company are undertaken jointly by Albert and Alfonso Aleman. Moreover, there is nothing in the

2. In addition, the papers filed with the court offered only limited excerpts from the depositions taken during discovery in these cases.

record to demonstrate that Albert Aleman was ever affirmatively denied the "overall responsibility" to share management of this closely held, family corporation. The documents provided to the court tend to demonstrate, to the contrary, that the responsibilities for corporate management were to be shared between two, essentially co-equal corporate officers, the President and the Secretary/Treasurer.[3]

The papers submitted by the parties demonstrate that Aleman Food Service, Inc. operates as a traditional, family owned business. The Articles of Incorporation of Aleman Food Services, Inc. indicate that the original incorporators of Aleman Food Service, Inc. were Albert Aleman, Alfonso Aleman and their mother, Adelaide Aleman. The Articles of Incorporation list Albert Aleman as the registered agent for the company, and designate the three incorporators as the Board of Directors of Aleman Food Service, Inc. Significantly, from the standpoint of this Opinion, the original Articles of Incorporation executed on May 1, 1987 are signed by "Albert T. Aleman, President," "Adelaide B. Aleman, Vice President," and "Al [Alfonso] Aleman, Secretary–Treasurer." The fact that Albert Aleman was originally listed as the President in the original Articles of Incorporation of Aleman Food Services, Inc., is further evidence that the brothers' titles may in fact be, in essence, interchangeable, and considered fungible by them.

In the family business in which the brothers were involved, they undoubtedly did not feel an elaborate corporate structure was necessary. In fact, the "Table of Organization" submitted is very simple and does not even show the President or the Secretary/Treasurer on the chart, but simply lists Aleman Food Services, Inc. in one box, without functional breakouts. Moreover, although the bylaws authorize a President, a Vice President, a Secretary and a Treasurer, the role of Vice President had been left open recently, after Adelaide Aleman became inactive in the business, and the two brothers divided the remaining three jobs between the two of them.

Furthermore, the company's bylaws demonstrate that both corporate officers at Aleman Food Service have overall responsibility for the affairs of the company. Article Five of the company's bylaws shows that, in this closely held corporation, joint action by both the President and the Secretary or the Treasurer is required to bind the company in formal contracts and other legal instruments. The Standard Operating Procedure issued by Aleman Food Service on June 1, 1980 is in accord with the bylaws of the company. Policy and Procedure Statement no. 2 of the Standard Operating Procedure, which applies to the Secretary/Treasurer says, "[n]o contract of any kind shall be entered into with any union, vendor, entity, or individual, unless

---

**3.** In supplemental papers filed in opposition to the defendant's Motion to Dismiss, the plaintiff included a copy of section 254 of 15 Texas Jurisprudence 3d (1981). Although not relied on as a dispositive recitation of the corporate law of the State of Texas, 15 Texas Jurisprudence 3d section 254 cites to several Texas court decisions which are instructive regarding how this court should view Albert Aleman's position and authority at Aleman Food Services, Inc.

According to the quotation provided by the plaintiff, "[t]he authority of any agent must ordinarily be derived from the board of directors acting as a body." 15 Tex Jur 3d § 254 (1981) (citing *Scott v. Farmers' & Merchants' National Bank*, 97 Tex. 31, 53, 75 S.W. 7, 13 (1903)). "But this authority need not necessarily be conferred by a precedent resolution of the board." *Id.*

(citing *Aransas Pass Harbor Co. v. Manning*, 94 Tex. 558, 562, 63 S.W. 627, 629 (1901)). Furthermore, "the corporation is bound where the agent has apparent authority or where the act of the agent has been ratified by the corporation." *Id.; see Diamond Paint Co. v. Embry*, 525 S.W.2d 529 (Tex.Civ.App.1975).

It appears to this court that in the case of Aleman Food Services, Inc., Albert Aleman had apparent authority. Moreover, although not factually conclusive, it is possible that, based on the sample year end ratification of all officers' acts by the Board of Directors, submitted by the plaintiff in the expedited briefing of defendant's last minute Motion to Dismiss, the corporation may have been in the habit of ratifying past acts of its corporate officers, including Albert and Alfonso Aleman, at the end of each year. Unfortunately, the ratification documents for the

prior approval or delegated authority is obtained from the Secretary/Treasurer." The stated objective of this company policy is to ensure that the Secretary/Treasurer maintains control over the legal obligations of the corporation. In addition, Article Four of the bylaws specifically delegates to the Secretary and the Treasurer the power to perform "such other duties as from time to time may be assigned him by the Board of Directors." Moreover, when those duties assigned by the bylaws to the Secretary and those assigned to the Treasurer are taken together, they clearly describe an individual who, when performing both jobs, clearly does have broad corporate responsibilities.

Lastly, attached to the Defendant's Motion to Dismiss are several modifications executed by Aleman Food Service and the Coast Guard during the performance of the contract at issue. While eight of those modifications were executed by Alfonso Aleman as President of Aleman Food Service, a modification executed on March 3, 1987 was signed by Albert Aleman, Secretary/Treasurer. This modification was accepted, apparently without reservation, by the contracting officer at the Coast Guard Academy, suggesting perhaps that even the government regarded both the brothers as having overall responsibility for the family business. Although waiver of defenses is a difficult principle to use against the sovereign and is not being relied on by this court to sustain the instant opinion, the waiver theory at least has emotional appeal in the instant cases, from a purely equitable standpoint.

The cumulative effect of the unrefuted testimony taken from Alfonso and Albert Aleman's deposition, and the other evidence submitted, demonstrates to this court that Albert Aleman clearly plays a fundamental role in the business affairs of Aleman Food Services, Inc. and, is in fact, a person having overall responsibility for the company's affairs. As such, Albert Aleman appears to this court to be a person competent to certify claims under the CDA.

At the October 4, 1991 conference, the court also indicated that it would not certify an interlocutory appeal of the denial of defendant's Motion to the United States Court of Appeals for the Federal Circuit under 28 U.S.C. § 1292 (1988). The statutory requirements for certification under Section 1292(d)(2) of Title 28 of the United States are as follows:

> When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that order within ten days after the entry of such order.

28 U.S.C. § 1292 (1988).

This statute came with the creation of the United States Claims Court in the Federal Courts Improvement Act of 1982, 96 Stat. 36–37, and particularly § 125(b) of that Act, as an adjunct to this court's assumption of final jurisdiction over cases. The operative language applicable to the United States Claims Court, included in 28 U.S.C. § 1292(d)(2), is identical to the statutory standard of certification utilized by the United States District Courts in 28 U.S.C. § 1292(b).[4]

Section 1292(b), applicable to the District Courts, was enacted in 1958, following a study and proposal by the Judicial Conference of the United States. The discussion at the conference emphasized the need for a narrow standard governing interlocutory appeals and the need for a procedural mechanism which would avoid opening the door to frivolous, dilatory, or harassing interlocutory appeals. Note, *Interlocutory Appeals in the Federal Courts Under 28*

---

relevant years 1987 and 1990, the years of the certifications at issue, were not included in the submission.

**4.** Because sections 1292(b) and 1292(d)(2) have the same operative language and functions, the

legislative history of § 1292(b) is "persuasive" regarding § 1292(d)(2). *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983), *cert. den.*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

*U.S.C. § 1292(b),* 88 Harv.L.Rev. 607, 610 (1975) (citing Hearing on the H.R. 6238 and H.R. 7260 before Subcomm. No. 3 of the House Comm. on the Judiciary 85th Cong., 2d Sess., ser. II at 21 (1958)).

■ The legislative history of the statute, as well as the historic, and often repeated, policy against interlocutory appeals, suggests that great restraint should be used in permitting interlocutory appeals. In Senate Report No. 2434, 85th Cong., 2d Sess. 1958 U.S.Code Cong. & Admin.News 5255, 5257, the legislators pointed out that "the indiscriminate use of such authority may result in delay rather than expedition of cases in the district courts."

Accepting the premise that an interlocutory appeal is appropriate only in a few cases, the federal courts have limited the usage of interlocutory appeals under § 1292(b) to "exceptional cases," with the key consideration being whether or not the order in question "truly implicates the policies favoring interlocutory appeal[:] [t]he avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3rd Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *see also Cardwell v. Chesapeake & O.R. Co.,* 504 F.2d 444, 446 (6th Cir.1974); C. Wright, Law of Federal Courts § 102, at 715 (1983).

In addition to reaching a determination that an interlocutory appeal is appropriate only in "exceptional cases," 28 U.S.C. § 1292(b) and (d)(2) sets out three criteria, all of which must be met, before a trial judge should certify an interlocutory order for appeal. The trial judge, due to his/her familiarity with the pleadings and Order or Opinion, as issued, is in the best position to decide if certification would promote efficient justice and to help avoid frivolous appeals. To qualify as appropriate for certification, the order must involve:

(1) a controlling question of law; as to which there is

(2) substantial ground for difference of opinion; and that

(3) possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued.

■ After considering the foregoing criteria, this court indicated that it would decline to certify the denial of the defendant's Motion to the United States Court of Appeals for the Federal Circuit because the decision is fact specific to the issue of whether Albert Aleman possessed the requisite authority to sign the certifications and, therefore, the application of the facts of the instant case to the law is not of a precedential nature sufficient to warrant certification. Moreover, although the Court of Appeals for the Federal Circuit might disagree, the court also believes that the decision issued at the status conference, and which is set to paper in the instant Opinion, is correct and not of a sufficiently tenuous nature to warrant certification.

## CONCLUSION

For the reasons discussed above, the court DENIES the defendant's Motion to Dismiss. The trial will commence, as scheduled on October 23, 1991.

IT IS SO ORDERED.