**UNIVERSAL CANVAS, INC., Appellant,**

v.

**Michael P.W. STONE, Secretary of the Army, Appellee.**

**No. 92–1061.**

United States Court of Appeals, Federal Circuit.

Sept. 14, 1992.

J. William Eshelman, Schmeltzer, Aptaker & Shepard, P.C., Washington, D.C., argued for appellant. With him on the brief was Suzanne Langford Sanford.

Joan M. Bernott, Sp. Litigation Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Stuart E. Schiffer, Deputy Asst. Atty. Gen., David M. Cohen, Director and Terrence S. Hartman.

Before MAYER, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.

MAYER, Circuit Judge.

Universal Canvas, Inc. appeals the Armed Services Board of Contract Appeals denial of an equitable adjustment and of a motion to vacate its decision for lack of jurisdiction. *Universal Canvas, Inc.*, ASBCA No. 36141, 1991 WL 104149, 1991 WL 130398 (April 29, 1991; July 3, 1991). We reverse.

*Background*

On August 31, 1984, the Natick Army Research, Development and Engineering Center (Natick) awarded to Universal Canvas, Inc. contract number DAAK60–84–C–0062 (contract 0062), for the manufacture of TEMPER tents (Tent, Expandable, Modular, Personnel) along with related components. The contract provided that the government would supply cotton oxford cloth to be used as the liner for the tents. But during manufacture, Universal had difficulties with the government furnished material (GFM). As a result, Universal alleges that its performance of the contract was delayed and it incurred expenses beyond what it had anticipated.

Universal started as a small awning shop in Corpus Christi, Texas, and was purchased in 1977 by Edward Cantu. After it received its first government contract in 1983, immediately preceding contract 0062, Universal acquired a 100,000 square foot facility in Brownsville, Texas, about 150 miles away from Corpus Christi. This new facility is where contract 0062 was per-

formed. During performance of the contract, Cantu was mainly at the Corpus Christi facility. Joe Flores, Universal's Vice President of Accounting, one of three vice presidents reporting directly to Cantu, was also based at the Corpus Christi facility, which served as the corporate headquarters. Initially, the Brownsville plant was managed by Ruben Solano, Cantu's brother-in-law and Universal's Vice President for Operations. In 1985, Cecil Hinojosa took over the management of the Brownsville plant from Solano.

On February 6, 1987, Universal filed a claim for an equitable adjustment for $3.3 million, later reduced to $3 million, certified by Flores. The claim was based on alleged problems with the GFM, such as tearing, width variations, and government delay in delivery. The contracting officer denied the claim, and Universal appealed to the Armed Services Board of Contract Appeals. The board held that Universal was not entitled to an equitable adjustment because its inefficiencies, and not any defects in the GFM, were to blame for the cost overrun. Specifically, the board found that Universal's new, inexperienced management and production personnel, in addition to its start-up costs, poor material handling, and poor planning caused the cost overruns.

After the board's decision was handed down, Universal filed a motion to vacate the judgment and dismiss the appeal for lack of subject-matter jurisdiction, based on the then-recent *United States v. Grumman Aerospace Corp.*, 927 F.2d 575 (Fed. Cir.1991), because its claim was not properly certified. In its motion, Universal argued that its certification did not meet the requirements of the Federal Acquisition Regulations (FAR), 48 C.F.R. § 33.207 (1991), as interpreted by *Grumman*, 927 F.2d 575, and *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426 (Fed.Cir. 1989). Relying on *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996 (Fed.Cir.1991), however, the board thought this was a case in which "the certification by a corporate officer, without explanation, [implies] that the officer has overall responsibility and may prop-

erly sign the certification." It reasoned that since Universal is a small business and since Flores served as Vice President of Accounting, reporting directly to the President and providing information to the government to support the equitable adjustment claim, Flores could properly certify the claim. It also said that "the remedy which appellant seeks flies in the face of the Contract Disputes Act and the intent of its drafters. Claim certification was intended by Congress to be a Government shield, and appellant is attempting to wield it as its own sword." In response to Universal's motion to reconsider the denial of its motion to vacate, the board said there was no reason to dismiss the case because at the time of certification there was "no defect on the face of appellant's certification." This appeal followed.

### Discussion

■ The Contract Disputes Act provides, "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1988). Further,

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

*Id.* § 605(c)(1). FAR § 33.207(c)(2) provides for two categories of individuals to certify claims:

> (i) A senior company official in charge at the contractor's plant or location involved; or
> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. § 33.207(c)(2). *Grumman* affirmed the validity and literal applicability of this regulation. 927 F.2d at 579.

The most telling aspect of this case is the board's statement that, "Although appel-

lant's counsel asserts that Mr. Flores' duties were only financial in nature, the record contains no evidence to support that allegation, nor does it indicate the extent of his responsibility over appellant's operations." Thus, the record is devoid of evidence of Flores' participation in the performance of the contract, presence at the contract site, prosecution of the claim, or responsibility within the company.

A certifying senior company official, under section 33.207(c)(2)(i), must "have both primary responsibility for the execution of the contract *and* a physical presence at the location of the primary contract activity." *Grumman,* 927 F.2d at 580. There is no evidence that Flores had either: he was based at the Corpus Christi plant, not the Brownsville Plant which was the place of performance, and the record contains no information about his responsibilities for the contract. Under section 33.207(c)(2)(ii), as confirmed by *Grumman,* an official must have overall responsibility for more than just the company's financial affairs. Again, there is no evidence on Flores' responsibility over corporate affairs.

We see this case as most similar to *Ball, Ball, and Brosamer,* 878 F.2d at 1427, in which a claim was certified by the "Chief Cost Engineer," a senior management position, reporting directly to the corporation's president, and the most senior official supervising and administering all "cost & claim aspects of the performance and completion of all the contracts." This was insufficient to satisfy the jurisdictional requirement absent evidence of the official's "general corporate authority." Because there was no evidence that he was in charge of the contractor's plant or location or had general corporate authority, he could not properly certify the claims. Here, Flores was a senior official reporting directly to the president, but he was based in Corpus Christi and, as stated by the board, there was no evidence that he had general corporate authority. All the board had were mere assertions of general authority by counsel; this is not a substitute for record evidence. Therefore, he could not properly certify the claims.

*Newport News,* 933 F.2d 996, does not alter our conclusion. In that case, a claim was certified by the sole Executive Vice President of Newport News Shipbuilding and Dry Dock Co. The record contained no information that he was in charge of the plant or location of the contract. But he could certify the claim under section 33.-207(c)(2)(ii) because by his title it appeared that the certification was by a corporate officer with "the requisite 'overall authority,' at least where his title is not inconsistent therewith," and on summary judgment the government offered no evidence to the contrary. *Id.* at 998 n. 2; *see Grumman,* 927 F.2d at 581. Ours, however, is a case in which the title of the corporate officer, vice president of accounting, is apparently inconsistent with the exercise of overall authority, and all the record shows is that the incumbent performed the limited duties expected of that position. Indeed, in *Newport News* we contrasted the sufficient position with titles like Flores', which would not qualify. 933 F.2d at 999 (*e.g., Grumman,* 927 F.2d at 580 (senior vice president and treasurer); *Ball, Ball & Brosamer,* 878 F.2d at 1426 (chief cost engineer); *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, 852 (1982) (economist)). There must be proof that a vice president for accounting has overall responsibility before his certification can be sufficient.

The government argues that it is significant that Flores' name was listed below Cantu's in a letter and above Hinojosa's; we agree with appellant that this is just as readily a result of the names being alphabetized. That Flores executed a cover sheet for a cost proposal is more consistent with a role as simply a financial officer, than as an official with greater responsibility. And Flores' base at the Corpus Christi headquarters rather than the Brownsville plant, cuts against his standing under the regulation.

■ Similarly, it is not sufficient that Universal went to hearing on a claim that was not properly certified to sustain jurisdiction over it. Parties cannot bestow subject jurisdiction upon the board and the

board cannot exceed its jurisdictional boundaries. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). We doubt our situation is one Congress foresaw, and it is likely to recur only rarely, but jurisdiction is an absolute concept; it either exists or it does not. *UNR Indus. Inc. v. United States,* 962 F.2d 1013, 1022 (Fed.Cir.1992). It does not run only in favor of the government. And contrary to the board it is neither a shield nor a sword; it is the predicate for the board's authority.

■ The government argues that an apparent concession by Universal's counsel "that he gave Universal infirm legal advice at the claim stage, and that he authored and signed a complaint containing erroneous allegations" should estop it from raising the jurisdictional impediment. We do not think so. That Universal's counsel thought the claim was properly certified, and did not anticipate *Grumman* is irrelevant to a jurisdictional analysis. Neither party, or the court for that matter, can be estopped from questioning jurisdiction. Nor do we agree with the government that this view could lead to widespread abuse of the certification process. All participants have a duty to assure there are no jurisdictional impediments at the earliest possible stage. After all, the purpose of this requirement is to ensure to the greatest possible extent that fraudulent, inflated and frivolous claims against the government are not presented. The hope is that truly responsible and authoritative individuals within a contractor's organization, large or small, will consider these claims in good faith and ensure their validity. To ignore the requirement is to subvert the purpose of the rule, the integrity of the federal procurement system and the public fisc.

### Conclusion

Accordingly, the decision of the board on Universal's motion to vacate and dismiss for lack of jurisdiction is reversed.

REVERSED.

COWEN, Senior Circuit Judge, dissenting.

There has been unanimous recognition by the courts and by the boards of contract appeals that the purpose of the certification requirement in section 6 of the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.* (1988), is to prevent the filing of fraudulent and unwarranted claims against the government, and that the burden of proof is on the contractor to establish that its certification complies with the CDA and FAR 33.207(c), its implementing regulation. Against that background of decisional law, this court has today reversed the decision of the Armed Services Board of Contract Appeals (ASBCA or Board), denying Universal's motion to vacate the Board's decision for lack of jurisdiction. The motion, which was not made by Universal until after the completion of a lengthy trial and the issuance of the board's decision denying Universal's claim on the merits, was based on Universal's allegation that its own certification did not comply with the provisions of the CDA and the FAR. For the reasons to be set forth, I would affirm the Board's decision in all respects.

I.

Universal submitted a claim for an equitable adjustment to the contracting officer on February 7, 1987. The CO initially rejected the claim due to formal deficiencies. Universal then retained an attorney to prepare the claim, including the required certification. Through counsel, who has represented the contractor in all the proceedings in this case, including this appeal, Universal resubmitted its claim to the contracting officer.

The claim certification was signed by "Joe R. Flores, Vice President, Accounting." On the basis of the certification, the ASBCA accepted jurisdiction of Universal's appeal from the contracting officer's denial of the claim. There ensued an eleven-day hearing before the ASBCA, with testimony from more than twenty witnesses and the introduction into evidence of more than 300 documentary exhibits. Universal Canvas is a small business which has three vice-presi-

dents. Mr. Cantu, the president of the company, who must have been fully acquainted with the functions and authority of Mr. Flores, testified in support of the contractor's claim. Neither he nor anyone else during the course of the eleven-day trial questioned the qualifications of Mr. Flores to sign the claim certification. While the appeal was pending, counsel for Universal sent two letters to the Board requesting a prompt decision on the merits. The first of these letters was sent on October 3, 1990, nearly nine months after this court's decision in *Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426 (Fed. Cir.1989). The second was sent on March 11, 1991, eleven days after our decision in *United States v. Grumman Aerospace Corp.,* 927 F.2d 575 (Fed.Cir.1991). No suggestion was made in either letter that Universal's claim contained a defective certification.

After the Board issued a decision on April 29, 1991, denying the contractor's claim, Universal filed a motion to dismiss the appeal for lack of jurisdiction. Relying on *Grumman,* Universal alleged, *inter alia,* that Mr. Flores was not a proper certifying official under FAR 33.207(c)(ii) because his duties were entirely financial in nature.

The Board treated the submission as a motion to vacate the Board's April 29, 1991, decision, and denied it, stating:

Here, [the contractor] is a small business. During the time period in question, [Universal] had a president, and Mr. Flores, the certifying official, was one of three vice presidents reporting directly to the president. Together with [Universal's] president, Mr. Flores was active in providing information to the Government in support of the claim, and the record suggests that his position was senior to that of the other vice presidents. Although [Universal's] counsel asserts that Mr. Flores' duties were only financial in nature, the record contains no evidence to support that allegation, nor does it indicate the extent of his responsibility over [Universal's] operations. FAR Section 33.207(c) was promulgated prior to

the submission of [Universal's] claim, and [Universal] presented Mr. Flores as an appropriate certifying official while presumably having knowledge of the regulation. On this record, we are not prepared to conclude that Mr. Flores did not possess the requisite responsibility to certify the claim.

Universal thereafter filed a motion for reconsideration which was also denied by the Board. Universal provided no evidence to substantiate the conclusory, unsworn statements in the motions that Mr. Flores was not qualified to certify its claim in this case.

I have set forth the foregoing statement, because I believe it necessary to set forth the facts underlying the Board's decision and because the statement is relevant to other issues in this appeal. However, I do not suggest that the contractor's attorney was guilty of any improper or unethical conduct. I agree with the Board that he had a right to proceed as he did. But I do say that there is no merit to his position and that the majority erred in adopting it.

## II.

Neither the Board nor the Army has taken the position that Mr. Flores was "[a] senior company official in charge at the contractor's plant or location involved" under FAR 33.207(c)(2)(i). That portion of the regulation is not in issue. Involved here is the second prong of the regulation, FAR 33.207(c)(2)(ii), which authorizes certification by "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." Based on the record evidence, the Board determined that Mr. Flores met the requirements of the second prong of the regulation. The issue in this appeal is whether the contractor has discharged its burden of demonstrating that the Board's decision is not supported by substantial evidence or that it is incorrect as a matter of law.

## III.

In denying Universal's motion to vacate, the Board considered our decisions in *Ball, Ball & Brosamer* and *Grumman,* and through its findings and conclusions, demonstrated that this case is clearly distinguishable from either of those decisions. The majority views this case as factually similar to *Ball.* However, the certifying official in that case was neither a corporate officer, nor a general partner of the corporation. Hence, the *Ball* certifier was not qualified under FAR § 33.207(c)(2)(ii), notwithstanding the degree of authority he exercised within the corporation. Here, Mr. Flores is unquestionably a corporate officer, and the relevant inquiry concerns only the scope of his corporate responsibility.

The facts in *Grumman* are entirely dissimilar to the facts in the instant case. Although the certifier in *Grumman* held the title of "Senior Vice–President and Treasurer," there is no indication that the *Grumman* court considered the descriptive title of the certifying official to be dispositive. Instead, the holding in that case was based on the undisputed evidence that the certifying official was not responsible "for anything more than simply deciding and reporting on whether particular dividend-like costs were employee compensation chargeable to a series of government contracts." 927 F.2d at 580.

The majority attaches great significance to the Board's statement that "although appellant's counsel asserts that Mr. Flores' duties were only financial in nature, the record contains no evidence to support that allegation, nor does it indicate the extent of his responsibility over appellant's operations." When the statement relied upon by the majority is read in context with the remainder of the Board's decision quoted in Part I above, it shows that the Board determined that in view of the record, Universal's unsupported attack on its own certification would not justify a finding that Mr. Flores lacked the authority to sign the certification. This determination by the Board is in full accord with our decision in *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 999, 1000 (Fed.Cir.1991). Although the majority has attempted to distinguish *Newport News,* I

think the court's opinion is clearly inconsistent with the basic holding in that case.

In *Newport News*, the board granted summary judgment for the contractor, concluding that "since the government has offered no evidence or proffer that [the certifier] lacked the required responsibility, ... we find no basis for concluding that the certification was not valid." On appeal, this court affirmed, holding that the government's conclusory statements regarding the inadequacy of the certification did not create a material issue of fact which precluded summary judgment for the contractor.

*Newport News* establishes the proposition that when the record contains *prima facie* evidence that a claim was certified by an appropriate corporate officer, the party challenging the certification must present evidence that the officer lacked the authority to certify the claim. Because Universal was obligated to submit a compliant certification, it was under an even greater burden than the government in *Newport News* to produce concrete evidence, rather than unsupported allegations, to establish the Board's lack of jurisdiction. Universal has failed to comply with that obligation. In accordance with the teaching of *Newport News*, we should not hold that the ASBCA was divested of jurisdiction where the record contains sufficient proof to cast the burden on Universal to proffer evidence that its own certification was inadequate.

## IV.

The board properly resolved the certification question in this case by adopting the "totality of the circumstances" approach which the Claims Court and the boards of contract appeals have routinely applied in post-*Grumman* cases to determine whether a corporate officer with a qualified title is in fact a proper certifying official. *See Aleman Food Servs., Inc. v. United States*, 24 Cl.Ct. 345 (1991); *Valcon II, Inc. v. United States*, 24 Cl.Ct. 479 (1991); *JAYCOR*, ASBCA No. 40911, 91–3 BCA (CCH) ¶ 24,082, 1991 WL 121271 (1991), and *Computer Sys. and Resources, Inc.*, ASBCA Nos. 39936, 42018, 91–3 BCA (CCH) ¶ 24,236, 1991 WL 170086 (1991). This approach was suggested by *Grumman*, which expressly rejected the notion that only a CEO is qualified to sign a contractor's certification. 927 F.2d at 581. The Claims Court and the boards have recognized that the regulation must be applied on a case-by-case basis, keeping in mind that similar corporate titles do not necessarily reflect commensurate levels of responsibility. Both tribunals have focused on certifying officials' "actual" authority, rather than on the "apparent" authority suggested by his title. They have considered the duties and responsibilities of the certifier, the official to whom he reports, and the size and structure of the corporation in determining whether the FAR requirements have been met.

In the instant case, the Board looked beyond Mr. Flores' title, considered the corporate structure of Universal and determined that Flores exercised broader actual authority than his title would suggest. The Board recognized that Universal was a small business. The Board found that Mr. Flores was one of three vice-presidents who reported directly to the president, that he occupied a position senior to the other vice-presidents, and was the only vice-president based at corporate headquarters. The board also called attention to the fact that Flores provided information in support of the claim.

On the basis of its findings of fact and the failure of Universal to submit any evidence supporting its allegation that Mr. Flores' duties were only financial in nature, the Board properly concluded that the record would not support a determination that Mr. Flores did not possess "the requisite responsibility to certify the claim." The Board's findings are supported by substantial evidence. Furthermore, its decision, which is in accord with our decision in *Newport News*, is correct as a matter of law.

## V.

In several decisions which have considered the legislative history of the CDA, this court has stated that the purpose of the

**854**

certification requirement is to prevent the filing of fraudulent and unwarranted claims against the government. *See Ball, Ball & Brosamer,* 878 F.2d at 4429. As the Board correctly observed, claim certification is a requirement for the sole benefit of the government. Surely, Congress never intended that a contractor, who is obligated to file a proper certification, would be permitted to use his alleged failure to comply with that obligation to set aside a decision on the merits by a board of contract appeals. In adopting Universal's position, the majority has granted this contractor a second opportunity to prevail on the same claim. With deference to my colleagues of the majority, I am convinced that the court's holding today is so repugnant to the purposes for which the certification requirement was enacted and so inconsistent with our decision in *Newport News* that the majority's decision should not stand.